**R. S. WAGONER, Appellant,**

v.

**CITY OF ARLINGTON, Appellee.**

No. 16203.

Court of Civil Appeals of Texas.

Fort Worth.

March 24, 1961.

Rehearing Denied April 21, 1961.

Martin, Moore & Tackett, and Elvin E. Tackett, Fort Worth, for appellant.

James E. Wright, Fort Worth, for appellee.

MASSEY, Chief Justice.

This is a condemnation suit. Appellant R. S. Wagoner was the owner of the property taken, and of land not taken, to the extent of approximately 188 acres, lying across a county road from that condemned by the City of Arlington for the purpose of constructing an airport. He will be hereinafter referred to as condemnee. The City of Arlington will be hereinafter referred to as the city.

Condemnee contested the right of the city to take his property. After issues were joined in the trial court the city filed its motion for summary judgment in relation to the matter of right and propriety of its condemnation proceedings, and following a hearing partial summary judgment was entered as prayed for. The effect thereof was to make the only issues for trial before the jury the amount of damages which condemnee was entitled to receive.

At the conclusion of the trial a single special issue was submitted to the jury, posing inquiry as to the value of the condemnee's property taken for airport purposes. The court refused to submit issues upon the question of the value, "before and after" condemnation, of condemnee's remaining 188 acres. The court denied condemnee's motion for leave to make the opening and closing argument before the jury, allowing the city to make such over condemnee's protest.

The jury returned its verdict finding the value of the condemned land, and judgment was entered based upon the verdict. Condemnee has appealed.

Judgment reversed and remanded.

■ We are of the opinion that the case should be reversed because of the refusal to permit the condemnee to open and close the argument made to the jury. In the case of Ready v. City of Marshall, Tex.Civ. App., Ft. Worth 1950, 234 S.W.2d 104, this court had a somewhat similar case to that before us and saw fit to reverse and remand the same for another trial because of the failure of the trial court to permit the condemnee to open and close the argument. The holding was that reversible error appeared and that Texas Rules of Civil Procedure, rule 269 controlled the case.

We believe any attempted distinction between the instant case and that of Ready v. City of Marshall would be of form rather than of substance. In our opinion the decision reached in the Ready case was correct and the judgment therein was properly reversed. It necessarily follows that the judgment in the instant case should be reversed and remanded because of the trial court having denied condemnee the right to open and close the argument to the jury on the issue of damages, such being the only issue submitted.

We recognize that argument may be made that T.R.C.P. 434 applies to a situation such as this. It has been held that the denial to the party who has the right, under the provisions of T.R.C.P. 266 and 269, to open and close the argument before the jury constitutes an error of law committed during the course of the trial, and that in order for such error to require reversal the complainant thereof must demonstrate from the whole record that it was reasonably calculated to cause and probably did cause the return of an erroneous verdict or rendition of an erroneous judgment. Hassell v. Pruner, Tex.Civ.App., Amarillo 1956, 286 S.W.2d 266, writ ref. n. r. e. (a will

contest); Harrison v. Chesshir, Tex.Civ. App., Amarillo 1958, 316 S.W.2d 909, reversed on other grounds in 159 Tex. 359, 320 S.W.2d 814 (an injunction suit). We have noticed also that in other jurisdictions the denial of a right to open and close has been held to warrant reversal only when the denial has been shown to have amounted to an abuse of discretion. See text and annotations at 53 Am.Jur., p. 368, "Trial", sec. 462, "Order of Argument; Right to Open and Close".

Nevertheless, we believe that T.R.C.P. 434 does not apply to the particular case and situation before us and that T.R.C.P. 266 and 269 afforded condemnee the right to open and close the argument before the jury, since he insisted thereupon and moved the court for leave to do so, which motion was denied. Regarding the securing of such right see Rayburn, Texas Law of Condemnation, Sec. 214(1), "Argument In the Trial Court—Permissible and Erroneous Argument". In 5 Texas Bar Journal p. 95 and 8 Texas Bar Journal p. 8 these rules were interpreted by the subcommittee on interpretation of the Texas Rules of Civil Procedure. This interpretation is printed under both rules in Vernon's Annotated Texas Rules. The answer printed is upon the matter of "when the plaintiff has the right to open and close", and excepts from such times "(2) where the defendant has the burden of proof on all matters which are submitted by the Court's charge to the jury, * * *". T.R.C.P. 269 affirmatively states that the "party having the burden of proof * * * on all matters which are submitted by the charge" *shall be entitled* to open and conclude the argument. In the instant case the condemnee had and preserved the substantive legal right to open and conclude the argument to the jury. There is an absence of any proof placed in the record which creates a contrary inference. We therefore believe that the error should be considered and treated as so substantial in nature or so connected with the rights of the parties or the course of the proceedings that it can-

not be said that the error did not influence the result. Therefore said error amounted to reversible error. On the matter of such a defendant's right to open and close and upon the distinction applicable to cases decided before and after the effective date of the 1941 Rules see McDonald, Texas Civil Practice, p. 1181, "Jury Trial: Argument", sec. 13.02, "Order and Time Allowed".

The evidence in the record constituted proof that the parcel of condemnee's land which was condemned by the city, lying on one side of a county road across from the remainder of condemnee's land, was, at the time it was taken, being used along with and in conjunction with said remainder for one general purpose and in such manner as to warrant treating the two tracts as an entire parcel. In other words the situation was such that under ordinary usage the inquiry pursuant to condemnation proceedings would have been not only as to the value of the land condemned and taken, but additionally as to the damages sustained by the decrease, if any, in the value of his remaining land. See Concho, S. S. & L. V. Ry. Co. v. Sanders, Tex.Civ.App., Austin 1912, 144 S.W. 693; Southwestern Public Service Co. v. Goodwine, Tex.Civ.App., Amarillo 1949, 228 S.W.2d 925, writ ref. n. r. e.; Gulf, Colorado and Santa Fe Railway Co. v. Payne, Tex.Civ.App., Ft. Worth 1957, 308 S.W.2d 146; 18 Am.Jur., p. 910, "Eminent Domain", Sec. 270, "Damage to Other Land of Same Owner"; 170 A.L.R. at page 721 et seq. under Annotation, "Compensation for diminution in value of the remainder of property resulting from taking or use of adjoining land of others for the same undertaking"; 6 A.L.R.2d at page 1197 et seq. under Annotation, "Unity or contiguity of properties essential to allowance of damages in eminent domain proceedings on account of remaining property."

We do not believe, however, that in this particular case condemnee properly showed himself entitled to introduce evidence concerning the diminution in the

value of his remaining land after a part was taken,—or tendered evidence thereon proper to be received,—and therefore there was no error in the court's refusal to admit same. The reason therefor is somewhat peculiar and may be such as will not re-occur upon the occasion of another trial. Condemnee was attempting to try his case on the theory that the highest and best use of his property, both as to that taken in condemnation and as to the remainder left in his hands, was for residential purposes and not for the farming and ranching pur-poses to which same was devoted at the time the city's condemnation proceeding was instituted. Under that theory we do not believe there could be any proper claim of unity between the land taken and the remainder and there would not be any dam-age which would necessarily inure to the 188 acres remaining. Only under the the-ory that the "unit", i. e. the whole use of the land held and unitized (as to use), was so substantially destroyed or diminished in utility that the value of the land remaining after condemnation was disproportionately reduced in value in comparison with the value of that taken as the direct result of the deletion from the "unit" of the portion condemned, and/or as the direct result of its devotion to the purposes for which it was condemned, would condemnee be en-titled to seek damages to the remaining land. This was not condemnee's theory and the evidence on damages tendered by him in his bill of exceptions had no relation thereto. Furthermore, the evidence which he did tender as part of his bill constituted, in part, mere proof of damage which he, in common with the community as a whole, would endure because an airport was lo-cated nearby. This would not constitute damages inuring to him as a condemnee because of a diminution in the value of his land remaining after condemnation. In another respect the tendered proof was based upon the hypothesis that the value of condemnee's remaining land (for resi-dential development purposes) would suffer because of a decrease in its desirability be-cause of the proximity of an airport. This

proof upon damages we consider to have been too remote, speculative and conjectural and therefore it was properly excluded.

We do not believe that there was any error in the trial court's rendition of partial summary judgment prior to the trial of the issues upon damages. It was con-demnee's contention that condemnation was improper because the city owned nearby property which was suitable for use as an airport, and which the city desired to sell, using the proceeds from the sale for the purpose of relocating the same airport and acquiring a part of his land. Basically, con-demnee's contention of impropriety lay in the fact that residential development of the city was approaching the present airport land, as result of which it had become rath-er valuable for residential purposes, and that the city's motive was inspired by a de-sire to sell the same for sufficient money to enable it to acquire the new site and have a profit for itself.

We believe a proper construction of the record, as same was before the trial court for consideration in passing upon the city's motion for summary judgment, would be that the question was posed as to whether the evidence proper to be considered, in the light of the motion, presented an issue of fact by reason of the condemnee's af-firmative allegations that the city's initia-tion of the proceedings under authority of its Charter, pertinent Eminent Domain Statutes, under Vernon's Ann.Tex.Civ.St. Art. 1107, "Condemnation of property", and Art. 1269h, "Airports, maintenance and op-eration", Sec. 1, subd. A, "Acquisition; sale or lease", constituted and amounted to ar-bitrary and capricious action. It further-more appears that the condemnee claimed that the city's action amounted to a legal fraud.

■ Consideration of the question re-quires application of tests in the determina-tion of whether the condemnee had raised an issue under the pleadings and evidence before the court at the summary judgment

hearing. He could be considered to have raised the issue only if it was unquestionably established in the evidence that there could have been no actual public necessity for the city to seek the land in question for airport purposes. The terms "arbitrary" and "capricious" as applied to the city's action must mean willful and unreasoning action, action without consideration and in disregard of the facts and circumstances existed at the time condemnation was decided upon, or within the foreseeable future. It is the purpose for which condemnation was sought which is to be examined in resolving the question; and if this purpose could in reasonable minds in good faith be deemed to be a public one, then there would be justification and lawful authority for the condemnation proceedings. Furthermore, though it be established that one result of such proceedings would be that the city would reap a profit such in itself could not raise an issue (even assuming that the profit objective under some circumstances would vitiate the proceedings) if there was also evidence that the public would benefit, as for example by having a more ready and convenient and accessible airport, one which was better drained of surface water following rains, one which would be more adaptable to airport purposes, etc., than would be the case if the land were not acquired.

■ The term "fraud" as applied to the institution of condemnation proceedings would be any act, omission or concealment, which involved a breach of legal duty, trust or confidence, justly reposed and is injurious to another, or by which an undue and unconscientious advantage is taken of another. Boucher v. Texas Turnpike Authority, Tex.Civ.App., Texarkana 1958, 317 S.W.2d 594, 601, citing from Kellum v. Smith, 1857, 18 Tex. 835, 836.

■ From our examination of the record we are convinced that the condemnee failed to raise a question upon the issue of fraud or upon the issue of whether the city's action was arbitrary and capricious. In so stating it is pointed out that we are talking about a Judicial Issue. When the use for which property is sought under authority of the statutes of eminent domain is an authorized public use the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. Imperial Irr. Co. v. Jayne, 1911, 104 Tex. 395, 138 S.W. 575, 587.

■ The history of the many laws enacted by the legislature of this State relating to the exercise of the right of eminent domain clearly shows that it is the policy of the legislature to liberalize the exercise of that power rather than to restrict it. Brazos River Conservation and Reclamation Dist. v. Costello, 1940, 135 Tex. 307, 143 S.W.2d 577, 130 A.L.R. 1220. In order for there to be a judicial issue, the condemnee must plead and prove that the city's act was founded in fraud or was arbitrary and capricious. It could not be said that condemnee has met the requisites of proof by merely introducing facts and inferences showing that alternate plans might be feasible or better adapted to the project sought to be accomplished which would not require his property, that the project was not essential or necessary, or that incident thereto the condemning authority might reap a profit. In such instances questions as to the necessity of taking the land sought to be condemned are concluded when the applicant for condemnation, acting within the scope of its authority, determines its use is necessary. The reason for this rule is that if it were otherwise one jury might hold on competent evidence that land in question in the suit (a constituent part of the whole of a larger amount necessary to the accomplishment of the objective of the condemning authority) was not necessary to such purposes and the accomplishments of an entire project destroyed because of the inability to obtain the small part of land which made the subject of the particular condemnation suit. 16 Tex.Jur., p. 401, "Em-

inent Domain", sec. 128, "Condemnation of Particular Property".

Neither may it be stated that in said connection a condemnee has met the requisites of proof sufficient to present a judicial issue where the record shows that there was room for two opinions, at the time the condemning authority determined upon the basis of one of such opinions that the land sought should be condemned. Action is not arbitrary and capricious when exercised honestly and upon due consideration, where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached. Rayburn, Texas Law of Condemnation, Sec. 38(1), p. 94 et seq., "Purposes For Which Land Is To Be Taken, Must Be Set Out In Statement In Writing"; Webb v. Dameron, Tex.Civ.App., Amarillo 1949, 219 S.W.2d 581, writ ref. n. r. e.

Condemnee cites liberally from the case of Brazos River Conservation & Reclamation Dist. v. Harmon, Tex.Civ.App., Eastland 1944, 178 S.W.2d 281, writ ref. want of merit. In that case the condemnor was held to have clearly abused its discretion in that, as a matter of law, it attempted to take more land than was necessary for the effectuation of the purposes to be accomplished by the project at hand. A distinction is to be made between such case and the case at bar. Here there is no contention that the city is seeking more land than is necessary for the purpose to be accomplished, but the contention is that the project is not necessary at all.

Remaining points of error relate to matters which probably will not occur upon the occasion of another trial. As indicated in the opinion another trial will be necessary because of the error of the trial court in refusing to permit condemnee to open and close the argument. For any necessity which might become apparent we will state that said points of error have been examined and are deemed without merit and for that reason are overruled.

Judgment reversed and cause remanded for another trial.

BOYD, Justice (concurring and dissenting).

I concur in the reversal, but I would also reverse the summary judgment.